35 Cal.Rptr.3d 427 (2005)
133 Cal.App.4th 1246
In re I.G., a Person Coming Under the Juvenile Court Law.
San Francisco County Department of Human Services, Plaintiff and Respondent,
v.
Bonnie C. et al., Defendants and Appellants.
No. A106784.
Court of Appeal, First District, Division Two.
November 2, 2005.
*428 Valerie E. Sopher, El Cerrito, under appointment by the First District Appellate Project's Independent Case System, for Appellant Mother.
Janice A. Jenkins under appointment by the First District Appellate Project's Independent Case System, for Appellant Father.
Dennis J. Herrera, City Attorney, Kimiko Burton-Cruz, Joseph Sandoval, Deputy City Attorneys, for Respondent.
Certified for Partial Publication.[*]
RUVOLO, J.

I.

INTRODUCTION
Appellants Bonnie C. (Mother) and Russell G. (Father) appeal from the order denying rehearing of an order approving the placement of their minor child, I.G., with a maternal cousin, K.W. They argue that the court abused its discretion by placing I.G. with K.W. rather than with her paternal aunt, who they maintain had placement preference under Welfare and Institutions Code[1] section 361.3. Mother and Father also claim that the Department failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 (ICWA)).
The San Francisco County Department of Human Services (the Department) moves to dismiss the appeal on the basis that the issues are moot. The Department also filed a motion to introduce additional evidence on appeal pursuant to Code of Civil Procedure section 909, and for judicial notice. We address these motions *429 with the appeal.[2]
In the unpublished portion of this opinion we conclude that the trial court did not abuse its discretion by placing I.G. with K.W. However, in the published portion we agree with Mother and Father that there has been a failure to comply with ICWA requiring remand.

II.

PROCEDURAL AND FACTUAL BACKGROUND
The factual and procedural background of this case is detailed in our unpublished opinion (A105430 (Jan. 24, 2005)). We set forth here only the background relevant to the issues raised on appeal.
I.G., born in 2001, initially was found to come within the provision of section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling). The petition described Mother's substance abuse, emotional problems, criminal history (including convictions for child cruelty and drug-related offenses), and Mother's failure to reunify with six other dependent children. The Department detained I.G. two days after her birth, and the court ordered her continued detention on May 24, 2001. Over the next 27 months, I.G. was placed at various times with both parents, Mother, and in out-of-home placements. Reunification services for Father were terminated on February 21, 2003.
The Department again detained I.G. on August 26, 2003, due to allegations that Mother abandoned I.G. and had an untreated substance abuse problem. Father filed a section 388 petition on October 2, 2003, seeking to place I.G. with T.G., Father's sister. On October 11, 2003, the Department placed I.G. with K.W., a maternal cousin in Compton.[3] Counsel for I.G. moved to decrease visitation. The court granted the motion on October 27, 2003, and ordered monthly visitation for both parents, with transportation costs paid for by the Department. The court denied Father's section 388 petition. On January 12, 2004, the court terminated reunification services for Mother.
Following the hearings on Father's section 388 petition and the section 387 disposition, the juvenile court acknowledged that T.G. was "a relative entitled to preferential consideration under section 361.3," but denied the petition on the basis that it was not in the best interests of I.G. at that time. The court continued I.G.'s placement with K.W., and continued the monthly visitation schedule for both parents.
Mother and Father filed a motion for rehearing. The juvenile court indicated that T.G. was "a preferred relative under [section] 361.3[, subd.] (b)(2). Mother's cousin [K.W.] is not." Nevertheless, the court held that "the commissioner was obligated to make an independent determination utilizing the criteria set forth in [section] 361.3 to determine which placement would be in [I.G.'s] best interest, regardless of whether one of the placements was a preferred relative and the other was a non-preferred relative." The court denied the application for rehearing, noting that "[a]lthough [T.G.] may be a `preferred relative' under [section] 361.3[, subd.] (c)(2), she is not the better placement for [I.G.]."
*430 In our January 24, 2005 opinion in case number A105340, we ordered the juvenile court to set a section 366.26 hearing.[4] On February 7, 2005, the juvenile court held a hearing in this matter. As indicated at that hearing, "we are on calendar for a settlement conference on a number of issues, including a 388, parental visitation, and a 366.26 hearing." The court indicated that "We have had brief discussions. I think that we all are on the same page at this point, and I want to reiterate what the agreement is and make the orders so that people are comfortable with it." The court granted the section 388 petition filed by I.G.'s paternal aunt, T.G., changing I.G.'s placement from the home of K.W. to T.G.'s home in Concord. The court ordered that the parents continue to have monthly visits with I.G., supervised by T.G., and weekly telephone calls. Finally, pursuant to our opinion, it issued an order setting the section 366.26 hearing for June 15, 2005.

III.

DISCUSSION

A. Motion to Dismiss

1. Placement of I.G. with K.W.[**]

2. Compliance with ICWA
Mother and Father argue that the prior placement order must be vacated because the Department failed to comply with the notice provisions of ICWA (25 U.S.C. § 1902). They do not identify any order in which the court addressed compliance with ICWA. Instead, noting that the issue of compliance with ICWA may be raised at any time, they assert that the "Department and juvenile court violated the ICWA because there is no evidence that the social worker made any further inquiry or, at the very least, sent notice to the Bureau of Indian Affairs.... This is not a case of adequate proof of notice before the juvenile court, but of no notice at all."
The Department first received information that Mother might have Native American heritage in April 2003. Mother told a social worker in Reno, Nevada that she was part Native American, which she claimed was "part of the reason" for her alcohol problem. "[W]hen the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary. (25 U.S.C. § 1912(a); [citations].) ... [I]t was actually the duty of the [Department] to notify the Tribe or the Secretary [of the Interior] of the filing of the petition by registered mail, return receipt requested. (25 U.S.C. § 1912(a).)" (In re Desiree F. (2000) 83 Cal.App.4th 460, 471, 99 Cal.Rptr.2d 688.) Rule 1439(f) of the California Rules of Court[7] mandates the following notice procedure: "(1) Notice ... must be sent ... by registered or certified mail with return receipt requested, and additional notice by first class mail is recommended. (2) Notice to the tribe must be to the tribal chairperson unless the tribe has designated another agent for service. (3) Notice must be sent to all tribes of which the child may be a member or eligible for membership. (4) If the identity or location of the parent or Indian custodian or the tribe cannot be determined, notice must be sent to the specified office of the Secretary *431 of the Interior, which has 15 days to provide notice as required...." Subdivision (g)(1) provides that "A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive." (Rule 1439(g).) Substantial compliance with the notice requirements of ICWA may be sufficient under certain circumstances. (In re Christopher I. (2003) 106 Cal.App.4th 533, 565, 131 Cal.Rptr.2d 122.) "The failure to provide the necessary notice requires this court to invalidate actions taken in violation of the ICWA and remand the case unless the tribe has participated in or expressly indicated no interest in the proceedings. [Citation.]" (In re Desiree F., supra, 83 Cal.App.4th at p. 472, 99 Cal.Rptr.2d 688.)
The Department is required to file with the court "a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the minor's status." (In re Marinna J. (2001) 90 Cal.App.4th 731, 739-740, fn. 4, 109 Cal.Rptr.2d 267.) Notice to the Bureau of Indian Affairs is required only if "the identity or location of the parent or Indian custodian or the tribe cannot be determined...." (Rule 1439(f)(4); see 25 U.S.C. § 1912(a).)
The Department has filed a motion to consider additional evidence on appeal on this issue. This additional evidence consists of copies of letters and forms sent by the Department to various Indian tribes and to the Bureau of Indian Affairs, the responses to these letters, as well as the transcript of a November 30, 2004 hearing at which the court mentioned ICWA issues.[8]
At the November 30, 2004 hearing, the court indicated that "There were some possible Indian Child Welfare Act noticing issues. The Department has sought to correct those issues by re-noticing. Part of our off-the-record discussions included a somewhat informal discussion regarding Mother's interest in attempting to determine whether or not she is related culturally to any of the existing tribes at this point. I have suggested to counsel and I will suggest to ... Mother if she is further interested, if she has other tribes to notice, we will be happy to notice them for her, meaning the Department.... So at this point I think the noticing issues have been addressed. So I am a hundred percent clear, if ... Mother has other tribes she wishes to have noticed, those tribes will be identified and given to [the Department] and they will be noticed also."
The Department maintains that the juvenile court made an "implied finding" that ICWA did not apply, and that the additional evidence it seeks to be considered on appeal constitutes substantial evidence supporting this "implied" ruling. In In re Nikki R. (2003) 106 Cal.App.4th 844, 131 Cal.Rptr.2d 256, the court considered a similar situation. There, the social worker had likewise sent notices to one Native American tribe and the Bureau of Indian Affairs (BIA), and received negative responses to the queries of whether the minor was an Indian child in relation to the tribe and whether any other tribe to which the child might belong could be identified. On appeal, the Orange County Social Services Agency filed a motion to take additional evidence, consisting of the notices to the tribe and the BIA, and their responses. The court held: "It is a trial court function to receive evidence of [the Department's] notice efforts and to determine if they measure up to ICWA standards.... [¶] *432 [The Department's] apparent practice of holding onto the evidence of its notice efforts and revealing it only when an issue arises on appeal is unacceptable. `Making the appellate court the trier of fact is not the solution.'..." (Id. at pp. 852-853, 131 Cal.Rptr.2d 256, citing In re Jennifer A. (2002) 103 Cal.App.4th 692, 703, 127 Cal.Rptr.2d 54.)
Here, the Department seeks to introduce evidence of notice to various tribes and the Bureau of Indian Affairs. The record does not demonstrate that any of these documents were introduced in evidence in the juvenile court. Consequently, we deny the Department's motion to consider this additional evidence. Whether or not we consider the court's statements at the November 30, 2004 hearing to be "implied finding[s]," the court did not have sufficient evidence before it to make a finding that ICWA did not apply.

B. Remand
As earlier noted, I.G. was originally detained by the Department in 2001 when she was two days old. Now she is four and a half years old, and still there is no permanent placement plan yet ordered. When we filed our prior decision in case number A105340 on January 24th of this year, we ordered the juvenile court to set a section 366.26 hearing. We were recently informed, in connection with a writ proceeding filed by Mother[9], that the section 366.26 hearing has finally been set for December 5th of this year, almost 11 months after we ordered the juvenile court to conduct such a hearing. It is well recognized that timeliness is of vital importance in juvenile dependency matters because delay usually does not serve a child's interests. (See In re Emily L. (1989) 212 Cal.App.3d 734, 743, 260 Cal.Rptr. 810.) Only last year our Supreme Court reminded juvenile and appellate courts of this state of "the strong countervailing interest, expressed by the Legislature itself, that dependency actions be resolved expeditiously. [Citations.])" (In re Jesusa V. (2004) 32 Cal.4th 588, 625, 10 Cal.Rptr.3d 205, 85 P.3d 2.) The delay in these proceedings is inexcusable.
Additionally, now we have an ICWA problem, apparently occasioned by the inattention of both the Department and the juvenile court to the stringent requirements of that federal law. We are most mindful of the potential adverse impact from any deficiency in complying with ICWA given the fact that noncompliance can invalidate the actions of the juvenile court, including placement orders. (25 U.S.C. § 1914 [tribe may petition to invalidate action on showing of violation of notice requirements]; In re Desiree F., supra, 83 Cal.App.4th at p. 475, 99 Cal.Rptr.2d 688 [trial court orders invalidated at the request of the tribe because notice had not been given in compliance with ICWA]; rule 1439(n)(2) [final decree of adoption may be set aside for noncompliance with ICWA].) Consequently, we agree with those courts that have emphasized the importance of strict compliance with ICWA notice requirements and, if necessary, have remanded the matter for the juvenile court to ensure that proper notice is given. (In re Karla C. (2003) 113 Cal.App.4th 166, 178-179, 6 Cal.Rptr.3d 205; In re Nikki R., supra, 106 Cal.App.4th at pp. 855-856, 131 Cal.Rptr.2d 256; In re H.A. (2002) 103 Cal.App.4th 1206, 1214, 128 Cal.Rptr.2d 12.)
Noncompliance with ICWA has been a continuing problem in juvenile dependency proceedings conducted in this state, and, by not adhering to this legal requirement, we do a disservice to those vulnerable *433 minors whose welfare we are statutorily mandated to protect. The virtual epidemic of cases where reversals have been required because of noncompliance with ICWA was noted by one of our Fourth District, Division Three colleagues almost three years ago: "In at least five opinions published in the last two months, appellate courts have admonished juvenile courts and social services agencies for giving the ICWA notice provisions short shrift. [Citations.]" (In re Antoinette S. (2002) 104 Cal.App.4th 1401, 1417, 129 Cal.Rptr.2d 15, dis. opn. of Moore, J.) Since then, reversals continue, seemingly at an unabated rate. (See In re Jonathon S. (2005) 129 Cal.App.4th 334, 28 Cal.Rptr.3d 495; In re Glorianna K. (2005) 125 Cal.App.4th 1443, 24 Cal.Rptr.3d 582; In re Merrick V. (2004) 122 Cal.App.4th 235, 19 Cal.Rptr.3d 490; In re Elizabeth W. (2004) 120 Cal.App.4th 900, 16 Cal.Rptr.3d 514; In re Gerardo A. (2004) 119 Cal.App.4th 988, 14 Cal.Rptr.3d 798; In re S.M. (2004) 118 Cal.App.4th 1108, 13 Cal.Rptr.3d 606; In re Louis S. (2004) 117 Cal.App.4th 622, 12 Cal.Rptr.3d 110; In re Karla C., supra, 113 Cal.App.4th 166, 6 Cal.Rptr.3d 205; In re D.T. (2003) 113 Cal.App.4th 1449, 5 Cal.Rptr.3d 893; In re Nikki R., supra, 106 Cal.App.4th 844, 131 Cal.Rptr.2d 256; In re Asia L. (2003) 107 Cal.App.4th 498, 132 Cal.Rptr.2d 733.) In addition to these published opinions, there have been "`numerous appellate complaints of non-compliance with ICWA,'" leading to 72 unpublished cases statewide in this year alone reversing, in whole or in part, because of noncompliance with ICWA.[10] (See In re Elizabeth W., supra, 120 Cal.App.4th at p. 906, 16 Cal.Rptr.3d 514.)
While this panel lacks the ability to stem the tide of this disgraceful statewide record, we can exercise our judicial power to lend assistance to young I.G. Accordingly, in the interests of justice upon remand, we direct that all further proceedings be conducted before the Supervising Judge of the Unified Family Court of the San Francisco Superior Court, and that this case be afforded the expeditious and diligent attention it so clearly deserves and needs.[11]

*434 IV.

DISPOSITION
The motion for additional evidence on appeal is denied. The Department's motion for judicial notice of two documents filed with the superior court is granted. (Evid.Code, § 452, subd. (d).) The appeal is moot as to the issues regarding I.G.'s placement with K.W. The matter is remanded with directions that the juvenile court proceed in a manner consistent with this opinion. In all other respects, the orders are affirmed.
We concur: KLINE, P.J., and HAERLE, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.A.1.
[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.
[2] By our order dated August 23, 2005, we took the motions to dismiss, for judicial notice and for consideration of additional evidence under submission to be decided with this appeal. We grant the motion for judicial notice of two documents filed with the superior court. (Evid.Code, § 452, subd. (d).)
[3] The Department's conduct in moving I.G. out of the county, allegedly in violation of a standing order of the juvenile court, was the subject of a contempt proceeding in the juvenile court.
[4] Mother filed a petition for extraordinary writ under California Rules of Court, rule 38.1 seeking to vacate the order setting the section 366.26 hearing. We denied that petition on the merits in our unpublished opinion in case number A109292, filed May 17, 2005.
[**] See footnote *, ante.
[7] All subsequent undesignated rule references are to the California Rules of Court.
[8] On our own motion, we take judicial notice of the transcript of the November 30, 2004 hearing. (Evid.Code, § 452, subd. (d).)
[9] That writ was denied by our order dated October 5, 2005.
[10] This number is cumulative from January 1, 2005, and is based on a Westlaw search conducted today. In some of the cases where reversals or vacations of juvenile orders were required, the reversals were "conditional," meaning that if the trial courts on remand determined that there had been compliance with ICWA, the vacated orders could be reinstated. (See In re H.A., supra, 103 Cal.App.4th at p. 1215, 128 Cal.Rptr.2d 12.)

One can hardly blame this chronic problem on the state's Judicial Council or its educational arms, the Center for Judicial Education and Research (CJER), and the Center for Families, Children, and the Courts, which offer regular courses (including online courses) and written materials dealing with ICWA compliance. (See Appen. to Cal. Rules of Court (2005 rev. ed.) Standards of Judicial Administration Recommended by the Judicial Counsel, §§ 25.2 [Judicial Education For Judicial Officers In Particular Judicial Assignments] & 25.3 [Judicial Education Curricula Provided In Particular Judicial Assignments], pp. 643-644 (Standards of Judicial Administration); http://serranus.courtinfo.ca.gov/education. The sheer volume of cases of demonstrating noncompliance with ICWA provides reason enough for supervising juvenile court judges throughout this state to take immediate steps to ensure that all judicial officers under their supervision avail themselves of these educational opportunities. Indeed, continuing education for juvenile law judicial officers is mandated by section 25.2 of the Standards of Judicial Administration.
[11] Under Code of Civil Procedure section 187, courts have wide latitude to carry out their authority to enter such an order by "any suitable process or mode of proceeding ... which may appear most conformable to the spirit of this code." The power to direct such proceedings have been applied, in other contexts, to proceedings before the juvenile court. (See In re Jeanette H. (1990) 225 Cal.App.3d 25, 34-35, 275 Cal.Rptr. 9.)