Filed 11/5/14  In re J.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>B.B.,<br><br>        Defendant and Appellant. | F068336<br><br>(Super. Ct. No. 516396)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

In this dependency case (Welf. & Inst. Code, § 300),[1] B.B. (mother) appeals from a September 10, 2013 order terminating her parental rights over her son, J.B. (the child). This was not mother's first appeal in this proceeding; she previously appealed from the jurisdictional and dispositional orders. In that appeal, we reversed those orders and remanded for the limited purpose of ensuring adequate notice pursuant to the Indian Child Welfare Act (25 U.S.C., § 1901 et seq.; ICWA) and California law. (*In re J.B.* (Oct. 3, 2013, F066404) [nonpub. opn.] (the first appeal).) During the pendency of this appeal, at mother's request, we stayed briefing pending the resolution in the juvenile court of the proceedings on remand and ordered the record augmented with the juvenile court's minute order or written decision. Once the remand proceedings were completed, we lifted the stay order and ordered an expedited briefing schedule.

In her opening brief, mother raises issues only from the remand proceedings, arguing she did not receive notice of the proceedings and the juvenile court did not comply with ICWA's 60-day statutory waiting period. Respondent Stanislaus County Community Services Agency (Agency) asserts these issues are not cognizable in this appeal because mother was required to file a notice of appeal from the remand proceedings, which she failed to do. We agree and, since mother raises no issues from the September 10, 2013 hearing, we affirm those orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, a juvenile dependency petition was filed on behalf of mother's then 22-month-old son alleging he came within the juvenile court's jurisdiction under section 300, subdivision (b) (failure to protect) based primarily on allegations that his parents exposed him to domestic violence on several occasions. At the September 5, 2012 detention hearing, father stated both he and mother had Native American ancestry; he filled out a Judicial Council ICWA-020 form identifying the "Sac and Fox Nation &

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2.

Citizen Potawatomi Nation" as tribes of which he may be a member or eligible for membership. The juvenile court temporarily removed the child from his parents' custody, ordered supervised visitation and set a combined jurisdiction/disposition hearing for October 10, 2012, in part to provide sufficient time for the Agency to send out ICWA notices. Mother later signed an ICWA-020 form indicating she has Cherokee ancestry.

On September 20, 2012, the Agency sent an ICWA-030 form (notice of child custody proceeding for Indian child) to the Bureau of Indian Affairs (BIA) and the relevant tribes, which gave notice of the proceedings and the next hearing date, October 10. On October 8, 2012, the Agency received a response from the Cherokee Nation, which advised that the information sent was incomplete and it needed additional information to verify Cherokee heritage, namely the maternal grandfather's complete and correct date of birth. The response further advised it needed dates of birth for everyone involved, their relationship to the child, and the maiden names of females listed. The Cherokee Nation recognized the Agency may not have access to complete family information, but asked that diligent research be conducted and it be supplied with as much information as possible.

At the October 10, 2012 hearing, the juvenile court stated the jurisdiction/disposition hearing needed to be continued because, while notice of the hearing had been given properly, not all of the return receipt cards had been received. The Agency asked for two to three weeks, since it appeared it needed to gather personal information about family members requested by "one of the tribes." The hearing was continued twice—first to November 1 and then to November 13, after mother requested a contested hearing. At the beginning of the November 13, 2012 hearing, the juvenile court stated notice of the hearing was given properly and it was unknown at the time whether ICWA applied. Mother testified at the hearing. After closing arguments, the juvenile court found the petition true, adjudged the child a dependent, removed him from his parents' custody, and ordered reunification services for mother and father. The juvenile

3.

court set a progress review hearing for February 13, 2013 and a six-month review hearing for April 24, 2013.[2]

On January 2, mother filed a notice of appeal from the November 13, 2012 jurisdiction/disposition hearing. In the meantime, the case proceeded to an interim review hearing held on February 13. A social worker's report prepared for the hearing stated that as to ICWA, all but two tribes had responded that the minor was not an Indian child, although the Cherokee Nation was still seeking a more specific birth date for the maternal grandfather. The social worker had left a message for mother requesting that information. Neither parent appeared in court for the February 13 hearing; the minute order states that the parents were not engaging in services. The Agency sent an ICWA notice of the hearing to the two tribes, but not to the Cherokee Nation or mother.

On March 6, the Agency filed a section 388 petition seeking to have the child's educational rights placed with the caretakers as the child needed to be assessed for speech delays, the parents were not participating in their plans or visiting the child, and the social worker was "struggling" to maintain contact with them. A hearing was set for March 19. J.T.B. (father), who was in custody, appeared at the hearing, but mother did not appear. The juvenile court found proper notice of the hearing had been given, admonished father regarding his and mother's failure to participate in services, warned that services would be terminated at the next hearing if things did not change, and granted the petition. The juvenile court advised the Agency that mother's mail had been returned and her address needed clarification.

The social worker's report for the six-month review hearing recommended termination of services and that a section 366.26 hearing be set, as neither parent had participated in services and mother's last visit with the child was on December 12, 2012. The six-month review hearing originally was set for April 24. For that hearing, the

_____

**2** Subsequent references to dates related to the dependency proceedings are to 2013 unless otherwise specified.

4.

Agency sent an ICWA notice to three tribes, including the Cherokee Nation, but not to mother. On April 24, the review hearing was continued to May 13; neither parent appeared at the April 24 hearing.

Both parents, however, appeared at the May 13 review hearing. The juvenile court found that notice of the hearing was given properly and it was unknown at the time whether ICWA applied. The juvenile court pointed out that mother's mail had been returned and directed her to complete a notification of mailing address before leaving that day. Mother did so, designating an address in Modesto. Mother testified at the hearing that she was "a good mother ... an excellent mother" and objected to the recommendation that her services be terminated. After hearing closing arguments, the juvenile court terminated reunification services for both parents and set a section 366.26 hearing for September 10.

On May 20, mother filed a notice of intent to file a writ petition challenging those orders. No petition was filed; accordingly we dismissed the proceeding on June 28.

On May 21, the Agency filed a request for a restraining order to prevent mother from contacting the foster parent due to threats mother allegedly made to kill the foster mother, her son, mother's child and herself. The juvenile court issued a temporary restraining order; at a June 5 hearing, the court granted the permanent restraining order. Mother was personally served with a copy of the temporary order, the notice of hearing, and the permanent order.

On May 23, mother's counsel filed a second change of address form, adding a space number to the address.

On July 2, the Agency filed a motion for determination of ICWA applicability. The Agency asserted that beginning on September 20, 2012, and multiple times thereafter, inquiries were mailed to the tribes for a determination and all tribes had now responded; their responses were attached. The Cherokee Nation's response found the child not eligible and listed the relatives' names and dates of birth, including the full birth

5.

date of the maternal grandfather, March 28, 1951. Based on the responses, the Agency requested the juvenile court make a finding that ICWA did not apply. That same day, the juvenile court issued the order finding ICWA inapplicable.

The section 366.26 report recommended that paternal rights be terminated and the child placed for adoption. The child had been moved to a new preadoptive home about a month earlier because the relative who had been caring for him was unable to adopt him "due to family politics and pressures." The family he was placed with wished to adopt him and had nearly completed the adoption home study process. Neither parent had visited the child since the last court hearing. While the parents had scheduled family visits with the child on two separate occasions, they did not show up for either visit.

The parents were present at the September 10 section 366.26 hearing. The juvenile court stated that notice of hearing was properly given and ICWA did not apply. Mother testified that it had been a while since she last saw her son; it had been "[a] few months." She did not agree with the recommendation to terminate her parental rights because she "did the best I knew for him." When asked if she still had a connection with the child, she said "No."

In closing arguments, mother's counsel argued the parent/child relationship exception applied, noted the lack of an adoption home study, and contended the child was only "specifically adoptable" because he had been diagnosed with "micropenis syndrome," which was a "disability." She was concerned that the child might become a "legal orphan" if parental rights were terminated. The juvenile court disagreed, explaining there was nothing to lead it to believe the child was not generally adoptable. The juvenile court found by clear and convincing evidence it was very likely the child would be adopted, there was no evidence termination of parental rights would be detrimental to the child, and ordered adoption as the permanent plan and termination of parental rights.

On October 3, we filed our unpublished opinion in the first appeal from the jurisdiction and disposition orders. In that appeal, mother contended (1) that the juvenile court erred by failing to evaluate her competency and the need to appoint a guardian ad litem, and (2) the notice of the hearing failed to comply with ICWA and California law. (*In re J.B., supra,* F066404.) While we rejected the first contention, we found the juvenile court erred in determining notice of the hearing had been properly given because the Agency did not comply with the ICWA notice requirements in two respects: (1) the Agency failed to send notice to the tribes for the continued hearings; and (2) there was nothing in the record to show the Agency had provided the Cherokee Nation with the information it had requested. (*Ibid.*)

Accordingly, we reversed the jurisdictional and dispositional orders "for the limited purpose of ensuring compliance with the inquiry and notice requirements of the ICWA and California law." (*In re J.B., supra,* F066404.) We further stated the following in the disposition: "Upon remand, the court shall direct the agency to comply with those requirements. At least 10 days after proper and adequate notice has been received, the court shall reinstate the jurisdictional and dispositional orders if no tribe responds that the children are members or eligible for membership. If a tribe responds that the children are Indian children or eligible for membership, the court shall proceed in conformity with ICWA and applicable California law." (*Ibid.*)

On November 8, mother filed a notice of appeal from the September 10 findings and orders. On December 17, mother's appellate counsel filed a motion for stay of briefing pending the trial court's action on remand from the first appeal. Counsel requested briefing in this appeal be stayed until the juvenile court complied with the remand orders, explaining that until those proceedings were concluded and the juvenile court determined whether the child is an Indian child, neither this court nor counsel could know whether the termination order appealed from would be vacated or reinstated. Counsel asserted that appellate review in this matter would only be appropriate and ripe if

7.

the trial court determined after proper notice that ICWA did not apply.  As counsel stated, "Only at that point in time would appellate review of that order be possible or appropriate."

On December 18, we issued an order granting mother's motion and stayed briefing in this appeal pending the juvenile court's compliance with and resolution of the remand direction in this court's opinion in the first appeal and further order of this court.  We also ordered the following:  "Within 10 days of the Stanislaus County Superior Court's resolution of the remand direction, the Clerk of the Stanislaus County Superior Court is directed to cause the superior court's minute order or other written decision in the matter to be prepared and certified as a supplemental clerk's transcript and to transmit the same to this court and to counsel.  The record on appeal will be deemed augmented to include the supplemental clerk's transcript."

On May 15, 2014, we filed a supplemental transcript that the Stanislaus Superior Court clerk's office prepared and transmitted to us.  That transcript is comprised of documents and minute orders filed in the juvenile court during the course of the remand proceedings, not just the juvenile court's "minute order or other written decision" with which we ordered the record be augmented.  The superior court also directed that reporter's transcripts be prepared of the three hearings that took place after remand, which we also accepted for filing on May 15, 2014.  As pertinent here, the April 15, 2014 minute order shows the juvenile court found that ICWA does not apply and that it reinstated the jurisdictional and dispositional orders.

On May 16, 2014, we issued an order vacating the December 18 order staying briefing "in light of the Stanislaus County Superior Court's satisfaction of this court's disposition and remand direction in *In re J.B.*, case No. F066404, and the Stanislaus County Superior Court Clerk's compliance with this court's December 18, 2013 order." We further ordered an expedited briefing schedule in light of the significant delay since the stay order took effect.

8.

## **DISCUSSION**

Mother filed her opening brief in this appeal on June 3, 2014. In it she raises only issues concerning the proceedings that took place after remand by this court in the prior appeal, including orders made at the juvenile court's April 15, 2014 hearing. She argues reversal of the juvenile court's order terminating parental rights, as well as its orders on remand reinstating the jurisdiction and disposition orders, is required because (1) mother was never provided actual notice of the remand proceedings and her trial counsel failed to protect her right to participate, and (2) the juvenile court's determination that ICWA did not apply was premature, as the statutory 60-day waiting period had not yet expired.

None of these issues pertains to the rulings and orders made at the September 10 termination of parental rights hearing from which she appealed. The Agency argues the issues mother raises are not reviewable in this appeal. Noting that the April 15, 2014 orders are now final because mother did not file a notice of appeal from them, the Agency contends we should affirm the juvenile court's September 10 orders since mother has not raised any cognizable issue on appeal. We agree.

Although mother states on the cover of her opening brief that this an "Appeal from Orders on Remand of the Superior Court," she admits in her introduction that she appealed from the juvenile court's order terminating her parental rights and asserts in her statement of appealability that an order terminating parental rights is appealable pursuant to section 395. She did not file a notice of appeal from the April 15, 2014 hearing after remand, at which the orders she now challenges were made. Pursuant to section 395, subdivision (a)(1), those orders were appealable. Mother does not contend otherwise. Accordingly, if she wanted to seek review of the remand proceedings, she was required to file a separate notice of appeal from the April 15, 2014 orders.

Mother asserts she did not need to file a notice of appeal from the April 15, 2014 orders because we already had jurisdiction by virtue of her November 8 notice of appeal. In support she cites *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864, which states

9.

that "[a] timely notice of appeal vests jurisdiction in the Court of Appeal." She argues a new notice of appeal was not required to give us jurisdiction over the ICWA issues she raises because it is already an issue within the pending appeal. While we do have jurisdiction over her appeal from September 2013 orders, we do not have the ability to review appealable orders from subsequent proceedings that were never identified in a notice of appeal.

A notice of appeal must identify the order being appealed. (Cal. Rules of Court, rule 8.100(a)(2).) Where several appealable judgments or orders have been made, each must be expressly specified, in either a single notice of appeal or multiple notices of appeal, in order to be reviewable on appeal. (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173.) While there is a policy of liberally construing a notice of appeal in favor of its sufficiency, the policy does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all. (*Ibid.*) Here, the sole notice of appeal filed lists only the September 10 hearing. Accordingly, we may review only orders issued at that hearing, not subsequent orders.

Mother next contends we must review whether the ICWA inquiry and notice requirements were satisfied on remand because this is her first available opportunity to challenge the ICWA orders made at the remand hearing. In support, she cites two of this court's cases, *In re Gerardo A.* (2004) 119 Cal.App.4th 988, 993, in which we held that a parent did not forfeit an ICWA challenge where the present appeal represented the first opportunity to raise the issue of ICWA compliance, and *In re Pedro N.* (1995) 35 Cal.App.4th 183, 189, in which we held that a parent who failed to timely appeal from the juvenile court's dispositional order could not, on appeal from a subsequent order terminating her parental rights, challenge ICWA notice issues that arose prior to the dispositional order. Mother claims her challenge is timely and cognizable under these authorities. But neither of these cases addresses the issue in this appeal, namely, whether a parent may challenge ICWA issues that occurred *after* the order from which the parent

10.

appealed.  Based on the authorities we have already cited, we conclude the parent may not; instead, it is incumbent on the parent to appeal from the orders he or she is challenging.

Finally, mother asserts we implicitly made the issue of whether the juvenile court properly complied with ICWA on remand an issue in this appeal when we stated in our December 18 order that briefing in this appeal was stayed pending the juvenile court's "compliance with and resolution of the remand direction" in *In re J.B.*, case No. F066404, and "augmented the record in this appeal with the entire record of the remand proceedings."

Our order, however, did not expand the scope of this appeal to include subsequent actions of the juvenile court; it merely granted mother's request to stay briefing because the juvenile court's actions on remand might moot this appeal.  While we did order augmentation of the appellate record, we ordered the Stanislaus County Superior Court to certify and transmit as a supplemental clerk's transcript only the "minute order or other written decision in the matter" so that we could determine whether this appeal was moot.

As with other appeals, an appeal from a juvenile court judgment reviews the correctness of the judgment at the time of its rendition on a record of matters that were before the juvenile court.  (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 706.)  While an appellate court may take evidence concerning facts that occurred after the judgment was rendered (Code Civ. Proc., § 909; Cal. Rules of Court, rule 8.252(c)), the authority to do so "should be exercised sparingly.  (See *In re Zeth S.* (2003) 31 Cal.4th 396.)" (Advisory Com. com., 23 pt. 3 West's Ann. Codes, Rules (2006 ed.) foll. rule 8.252, p. 78.)  In *Zeth S.*, our Supreme Court held that, absent exceptional circumstances, consideration of postjudgment evidence in an appeal from an order terminating parental rights violates the generally applicable rules of appellate procedure, as well as the express provisions of section 366.26.  (*Zeth S.*, at pp. 413-414.)

An appellate court, however, may consider postjudgment evidence to determine whether it renders an issue on appeal moot. (*In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1421-1422.) That is precisely why we ordered the record augmented with the minute order or written decision of the remand proceedings. That the superior court clerk transmitted clerk's and reporter's transcripts of the entire proceedings after remand, which we then filed, did not expand the scope of the appeal to include those proceedings.

In sum, mother appealed only from the September 10 hearing at which her parental rights were terminated. She raises no issue stemming from that hearing in this appeal; instead, she raises issues only with respect to proceedings that occurred subsequent to that hearing from which she has not appealed. Given this procedural posture, we have no choice but to affirm the September 10 order terminating mother's parental rights.

## DISPOSITION

The order terminating parental rights is affirmed.

_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
GOMES, J.

12.